ANTHONY A. ACZAS ET AL. *v.* STUART HEIGHTS, INC., ET AL.

KING, C. J., MURPHY, ALCORN, HOUSE and THIM, Js.

Argued June 8—decided July 5, 1966

*Fred B. Rosnick,* for the appellant (named defendant).

*J. Warren Upson,* with whom, on the brief, was *Donald McPartland,* for the appellees (plaintiffs).

HOUSE, J.  This action was brought in three counts, but only the first two are involved in this appeal. The first count alleges the breach of a covenant against encumbrances contained in a warranty deed in the usual form running from the named defendant, hereinafter referred to as the defendant, to the plaintiffs. The second alleges misrepresentation predicated upon the same covenant. The only alleged encumbrance relevant to this appeal consists of an easement to the city of Waterbury to construct and maintain a sanitary sewer line through the premises conveyed to the plaintiffs. The court generally found the issues for the plaintiffs and rendered judgment awarding damages in the amount of $4000, from which judgment the defendant has taken this appeal.

The finding is not subject to material correction. There was no error in the refusal of the court to include in the finding the evidential matters contained in the defendant's draft finding. Practice Book § 649. Nor is it required that the court's find-

ing in any paragaph be in the identical language of the request, although the latter is sustained by evidence. It is sufficient that the fact itself is found. *Mad River Co.* v. *Pracney,* 100 Conn. 466, 471, 123 A. 918.

One ruling on evidence requires preliminary consideration. A licensed land surveyor called as a witness by the plaintiffs testified that he had inspected and surveyed the subject property, had examined a map and record of the sanitary sewer line easement in the city engineer's office and, as a result of this survey, inspection and examination, had prepared a map which reflected his opinion as to the course of the sewer easement and pipe running through the plaintiffs' land. The defendant objected to the map as an exhibit because it purported to show the exact location of the sewer easement, but it was admitted over this objection. Under the circumstances, the "map was no more than the pictorial representation of the testimony of the witness through whom it was offered in evidence; *Banks* v. *Watrous,* 134 Conn. 592, 595, 59 A.2d 723; or, as Professor Wigmore puts it, 'a nonverbal mode of expressing a witness' testimony.' 3 Wigmore, Evidence (3d Ed.) p. 175." *Staff* v. *Hawkins,* 135 Conn. 316, 320, 64 A.2d 176. Furthermore, the existence of the twenty-foot right of way over the subject property in the location depicted on the exhibit with the trunk sewer installed approximately in the center of the right of way was subsequently confirmed by an assistant engineer for the city of Waterbury who had supervised the installation of the sewer line in June, 1956. See *Sondik* v. *Beth El Temple of West Hartford, Inc.,* 152 Conn. 712, 714, 207 A.2d 583. The map was properly admitted as an exhibit.

From the evidence presented, the court found

that the premises shown as lot 5, in section 3, on a map of Stuart Heights on file in the office of the Waterbury town clerk in Map Book 29, page 88, was conveyed to the plaintiffs by the defendant in November, 1961, by a warranty deed in which the defendant covenanted that the land was free from all encumbrances except those stated in the deed. The deed did not include among the encumbrances recited therein any statement that the land was subject to an easement to the city of Waterbury for the construction and maintenance of a sanitary sewer line. Significantly, however, the deed did recite that the premises were subject to a mortgage from the defendant to the Savings and Loan Association of Waterbury, Inc., which was recorded in volume 806, page 433, of the Waterbury land records. This mortgage deed, executed in January, 1961, by the defendant acting through the same corporate officer who later in November executed the warranty deed to the plaintiffs, recited that the premises were "[s]ubject to: . . . 3. Sanitary sewer easement to City of Waterbury 20 ft. wide crosses the above lot." The map of section 3 of Stuart Heights, filed in the town clerk's office in Map Book 29, page 88, prior to the January, 1961, mortgage and to which specific reference was made in the warranty deed to the plaintiffs, shows a twelve-inch sanitary sewer line in a twenty-foot right of way located on or under lot 5. The court, with counsel, also inspected the premises and found thereon manholes spaced along the twelve-inch sanitary sewer line crossing the plaintiffs' land.

There is no record of a conveyance to the city of Waterbury of an easement over the premises. The city claims to have acquired its easement by eminent domain. The charter of the city of Water-

bury provides that all sewer construction shall be under the supervision of the department of public works and that the board of public works is empowered, following a vote of the board of aldermen authorizing the construction, to "take and appropriate for the city any . . . estate, right, privilege or franchise necessary or advisable for the construction of such sewers." Waterbury Charter § 3141 (1957); 21 Spec. Laws 637, § 259. Without reciting in detail the finding of the court, it suffices for us to note that the board of public works, acting pursuant to the authority of the charter and following customary procedures as to notice and hearing, in 1956 laid out in the area a twenty-foot sanitary sewer right of way and easement which crossed the subject property then owned by the defendant. The bureau of assessments assessed damages and benefits to the persons affected by the proposed public improvements and determined that as to the defendant the benefits equaled the damages. The report of the bureau of assessments was accepted and adopted by the board of aldermen and was recorded in the Waterbury land records. The records of these various public bodies disclosing reports to them and their actions thereon were admissible to show their doings. *Alderman* v. *New Haven,* 81 Conn. 137, 142, 70 A. 626. A twelve-inch sanitary sewer was constructed over the easement on the subject property in June, 1956.

The city was not a party to this action, and the defendant offered no evidence except on the issue of damages. On this record, the court was amply justified in reaching the conclusion that the sanitary sewer easement constituted an encumbrance on the plaintiffs' property. The court was entitled to take into consideration the presumption that public offi-

cials acting officially properly performed their duties. *Comley ex rel. Brown* v. *Lawlor,* 119 Conn. 155, 161, 174 A. 415; *Schuster* v. *Johnson,* 107 Conn. 133, 135, 139 A. 502; *State* v. *Main,* 69 Conn. 123, 140, 37 A. 80. In the absence of any evidence or averment to the contrary, the court could assume that the defendant received the notice required by the charter and was chargeable with notice of the entire proceeding; *Katsch* v. *New Haven,* 86 Conn. 326, 333, 85 A. 523; and that the city and its officials acted in accordance with the law. This presumption serves the purpose of evidence in making out a prima facie case. *Viggiana* v. *Connecticut Co.,* 122 Conn. 514, 518, 191 A. 95; *New London* v. *New York, N.H. & H.R. Co.,* 85 Conn. 595, 600, 84 A. 114. The court could also properly consider as materially significant the totally unexplained inconsistency between the position taken by the defendant on this trial and the admissions in the prior mortgage deed and map reference to the existence of the sewer easement as an encumbrance. See *Halpine* v. *Halpine,* 138 Conn. 578, 580, 87 A.2d 146. Further, in determining whether, as between the city of Waterbury and the defendant, the city had acquired a valid right of way in 1956 or whether in any particular the condemnation proceedings were defective, the court was also entitled to consider the principle that "[a] property owner who stands by in silence and acquiescence and permits an improvement to be made, knowing of its progress and the intention to pay for it by special assessment including his property, and knowing of a defect in the proceedings, will be estopped from attacking the validity of the assessment in an action to restrain its collection or to cancel or discharge a lien based on it. . . . And this has been held both when the proceedings have

been attacked for irregularity, and when their validity is denied, but color of law exists . . . and when the jurisdiction or power of the municipality has been assailed." *Johnston* v. *Hartford,* 96 Conn. 142, 155, 113 A. 273; see *New London* v. *Miller,* 60 Conn. 112, 114, 22 A. 499.

An encumbrance as that term is used within the meaning of the covenant against encumbrances in warranty deeds includes " 'every right to or interest in the land, which may subsist in third persons, to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance.' " Rawle, Covenants for Title (4th Ed.), p. 94 (quoting 2 Greenleaf, Evidence § 242); *Kelsey* v. *Remer,* 43 Conn. 129, 138. It must be a lawful claim or demand enforceable against the grantee. *Staite* v. *Smith,* 95 Conn. 470, 472, 111 A. 799; *Reed* v. *Stevens,* 93 Conn. 659, 663, 107 A. 495. We find no error in the conclusion of the court, based on its finding and the evidence which supports it, that the sanitary sewer easement running through the premises which the defendant conveyed to the plaintiffs constituted an encumbrance upon the property. Accordingly, the defendant breached its warranty against encumbrances.

The court concluded that the encumbrance diminished the fair market value of the plaintiffs' property by $4000, which sum was awarded to the plaintiffs as damages. The measure of damages for the breach of a covenant against encumbrances is the loss actually sustained by the grantee. *Hubbard* v. *Norton,* 10 Conn. 422, 435; Rawle, op. cit., p. 291; 21 C.J.S., Covenants, § 145. There was evidence from a real estate appraiser that the fair market value of the premises was $16,500 with no sanitary sewer easement across it, whereas with the sanitary

sewer on it, it had a valuation of $12,000. On cross-examination, the same witness testified that in his opinion "the sewer line caused a $4,000.00 diminution in value." The evidence supported the court's finding of a $4500 difference in market value owing to the existence of the sewer line, and the defendant has no ground of complaint on appeal that the court's ultimate conclusion as to damages was the lesser amount of $4000. *Commonwealth Fuel Co.* v. *McNeil,* 103 Conn. 390, 412, 130 A. 794.

There is no error.

In this opinion the other judges concurred.